UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

JANA SMITH,

Plaintiff,

v.

MARK DOWNEY, CHARLES OLSEN, ARIELL HARTWELL, and SHERMAN SMITH,

Defendants.

3:21-cv-00454-JR

FINDINGS AND RECOMMENDATION

Russo, Magistrate Judge:

Plaintiff, Jana Smith, a self-represented litigant, brings this action seeking relief for the defendants' "discriminatory hostile housing environment, conspiracy to interfere with civil rights, conversion, retaliation, ouster, false imprisonment, trespass, failure to maintain, unlawful and deceptive trade practices and other common law claims arising out of plaintiff's lease of [a Portland, Oregon] premises." Plaintiff moves for entry of default judgment against defendants Charles Olsen and Sherman Smith. For the reasons stated below, the motion should be granted consistent with the terms outlined in this Findings and Recommendation.

## BACKGROUND

Plaintiff alleges she sublet a room from May 15, 2018, to April 12, 2020, at a premises located at 3814 Hassalo Street, Portland, Oregon. Second Amended Complaint (doc. 185) at ¶ 1. Plaintiff alleges defendant Mark Downy owns the premises and was plaintiff's landlord; defendant Olsen was also plaintiff's landlord in that he leased from and managed the premises for Downy by subletting rooms; defendant Arielle Hartwell, also plaintiff's landlord who sublet and comanaged the premises from October 2019 until April 2020; and defendant Smith is plaintiff's ex-husband who conspired with defendants to convert plaintiff's personal possessions from the premises. *Id*. at ¶¶ 2-6.

Plaintiff asserts she rented a small room and placed a storage shed in the yard of the premises. *Id*. at ¶¶ 8-9. Based on Olsen's assurances that the other individuals living in the house were stable and "enthusiastically" approved her residency, plaintiff alleges she moved in and constructed a storage shed at considerable expense. *Id*. at ¶¶ 10-11. However, plaintiff asserts after a few months the "stable" residents left and were replaced with "substance-addicted drifters." *Id*. at ¶¶ 12-14.

Plaintiff alleges that after suffering malfunctioning facilities, theft, unsanitary conditions, damage to her property, violent behavior, and "encouraged" harassment, defendant Downy gave her notice to "vacate" the premises in October 2018. *Id*. at ¶¶ 15-28. Plaintiff asserts she continued to suffer harassment, and vandalism to, and theft of, her property. *Id.* ¶ 30-39.

Plaintiff alleges in October 2019, defendant Hartwell arrived as the new house manager and told plaintiff, "the sole reason she was there was to get plaintiff out." *Id.* ¶ 40.

Plaintiff alleges the attempts to get her to vacate the premises, including the use of violence, continued. Plaintiff also observed defendant Hartwell oust others and take possession of their

belongings. *Id.* ¶ 43. Plaintiff asserts defendants Downy and Olsen had her cars unlawfully towed. *Id*. at ¶¶ 47, 127.

Plaintiff asserts that in April 2020, defendants Hartwell, Olsen, and Smith broke into her shed and converted plaintiff's "most valued possessions from the vandalized storage shed." *Id*. at ¶¶ 55-57.

Plaintiff asserts the following twelve claims: (1) violation of the Fair Housing Act against defendants Olsen and Downey; (2) conspiracy to interfere with her civil rights against defendants Olsen and Downy; (3) failure to maintain the premises in violation of State law against defendants Olsen and Downy; (4) retaliation against defendants Olsen, Downy, and Hartwell; (5) unlawful ouster against defendants Olsen, Downy, and Hartwell; (6) abuse of access against defendant Olsen and Downy; (7) trespass to chattels against defendants Olsen, Downey, Hartwell, and Smith; (8) conversion against defendants Olsen, Hartwell, Downey, and Smith; (9) intrusion upon seclusion against defendant Hartwell; (10) "unlawful tow" against defendant Downey; (11) violation of Portland Renter additional protections against defendants Olsen and Downy; (12) intentional infliction of emotional distress against defendants Olsen, Downy, Hartwell, and Smith.

Plaintiff served all defendants and obtained an entry of default against defendants Olsen and Smith. Plaintiff now seeks a default judgment against defendants Olsen and Smith.

**DISCUSSION**

In considering a motion for default judgment, the court accepts "the well-pleaded factual allegations in the complaint as true." *DIRECTV, Inc.*, 503 F.3d at 854. However, the court "does not accept as admitted facts that are not well-pleaded, conclusions of law, or facts relating to the amount of damages." *United States v. RiverCliff Farm, Inc.*, 2017 WL 3388172, *1 (D. Or. Aug. 7, 2017) (citations omitted); *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696,

702 (9th Cir. 2008) ("[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true") (citation and internal quotations omitted). Put another way, "[i]t is well settled that a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

A district court has discretion in deciding whether to enter a default judgment. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising this discretion, the court may consider a number of factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits (the Eitel factors). *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Additionally, when a party seeks entry of default judgment, courts have a duty to examine their own jurisdiction—both subject matter and personal. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

This Court has subject matter jurisdiction pursuant to 28 U.S.C §§ 1331 and 1343 because the claims involve or are related to federal causes of action arising under 42 U.S.C. §§ 3601, 1985.

The Court has personal jurisdiction over defendant Olsen because he resided within this District at the time plaintiff initiated this action and committed the alleged activities in violation of plaintiff's rights within this District. Defendant Smith is a resident of North Carolina. Plaintiff alleges Smith committed the acts, giving rise to this cause of action within the District.

**The Eitel Factors**

In determining whether to enter default judgment, courts in the Ninth Circuit consider the factors set forth in *Eitel*, 782 F.2d at 1471-72. On balance, the factors weigh in favor of default judgment here.

(1) Plaintiff will be prejudiced absent default judgment. "And any potential prejudice to the plaintiff favors granting a default judgment." *Contractors Bonding & Ins. Co. v. Radian Constr. Corp.*, 2021 WL 5927682, *2 (D. Or. Nov. 29), *adopted by* 2021 WL 5925962 (D. Or. Dec. 15, 2021) (citation and internal quotations omitted).

(2) and (3) The second and third factors – the merits of plaintiff's claims and the sufficiency of plaintiff's complaint[1] – also favor granting plaintiff's motion in part. The Ninth Circuit has directed that the second and third factors, taken together, require the dispositive pleading to "state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). The Court addresses the merits and sufficiency of plaintiff's claims below:

Violation of the Fair Housing Act

To state a claim for violation of the Fair Housing Act, a plaintiff must plead "that she was subjected to (1) unwelcomed (2) sexual harassment that was (3) sufficiently severe or pervasive so as to interfere with or deprive the plaintiff of her right to use or enjoy her home." *Salisbury v.*

---

[1] The Court notes that plaintiff's motion for default judgment draws its analysis from her Second Amended Complaint, filed in September 2025 (doc. 185). The record shows defaulted defendants have only received summons and plaintiff's original complaint (docs. 1, 16, 27). As the claims alleged in the original complaint against both defendants remain largely unchanged, and the parties have both failed to appear, the Court will proceed with the analysis under the SAC. *See* Fed. R. Civ. P. 5(a)(2) (No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4). Plaintiff's Second Amended Complaint removes seven claims but does not add new claims.

*Hickman*, 974 F. Supp. 2d 1282, 1290 (E.D. Cal. 2013) (citing *Quigley v. Winter*, 598 F.3d 938, 946-47 (8th Cir. 2010)). Plaintiff's Complaint sufficiently meets this standard.

Conspiracy to Interfere with Civil Rights under 42 U.S.C. § 1985(3)

Section 1985 creates a civil action for damages caused by two or more persons who "conspire ... for the purpose of depriving" the injured person of "the equal protection of the laws, or of equal privileges and immunities under the laws" and take or cause to be taken "any act in furtherance of the object of such conspiracy." 42 U.S.C. § 1985(3). "[T]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." *Caldeira,* 866 F.2d 1175, 1182 (9th Cir. 1989). Plaintiff has alleged no deprivation of rights under § 1983. This claim must therefore be dismissed against defendant Olsen.

Failure to Maintain under ORS 90.320(1)

Under Oregon law, a landlord must "at all times during the tenancy maintain the dwelling unit in a habitable condition." ORS 90.320(1). Plaintiff's claim sufficiently alleges that conditions in her rental unit were not habitable. However, because ORS 90.320(1) is subject to a one-year statute of limitations, her claims must be limited only to those violations that occurred between March 24, 2020, and the date she filed her Complaint, March 24, 2021. As plaintiff moved from the rental unit on April 12, 2020, her claims are limited to the period from March 24, 2020, through April 12, 2020.

Retaliation under ORS 90.385

Under Oregon law, a landlord "may not retaliate by increasing rent or decreasing services, by serving notice to terminate the tenancy or by bringing or threatening to bring an action for possession." ORS 90.385(1). Plaintiff's claim sufficiently alleges that she was subjected to retaliatory acts by defendant Olsen. However, because ORS 90.385 is subject to a one-year statute

of limitations, her claims must be limited only to those violations that occurred between March 24, 2020, and the date she filed her Complaint, March 24, 2021. As plaintiff moved from the rental unit on April 12, 2020, she must limit her claims to the period from March 24, 2020, through April 12, 2020.

Unlawful Ouster under ORS 90.375

Under Oregon law, it is unlawful for a landlord to "remove or exclude the tenant from the premises, seriously attempt or seriously threaten unlawfully to remove or exclude the tenant from the premises or willfully diminish . . . services to the tenant." ORS 90.375. Plaintiff's claim sufficiently alleges that she was subjected to unlawful ouster by defendant Olsen. However, because ORS 90.375 is subject to a one-year statute of limitations, her claims must be limited only to those violations that occurred between March 24, 2020, and the date she filed her Complaint, March 24, 2021. ORS 12.125. As plaintiff moved from the rental unit on April 12, 2020, she must limit her claims to the period from March 24, 2020, through April 12, 2020.

Abuse of Access under ORS 90.322

Under Oregon law, it is unlawful for a landlord to "abuse the right of access or use it to harass the tenant." ORS 90.322(2). Plaintiff's claim sufficiently alleges that she was subjected to abuse of access by defendant Olsen. However, because ORS 90.322 is subject to a one-year statute of limitations, her claims must be limited only to those violations that occurred between March 24, 2020, and the date she filed her Complaint, March 24, 2021. As plaintiff moved from the rental unit on April 12, 2020, she must limit her claims to the period from March 24, 2020, through April 12, 2020.

Trespass to Chattels and Conversion

To demonstrate trespass to chattels, the plaintiff must support each element of a conversion claim. The only difference is the extent of the interference, as the tort allows recovery "for interferences with the possession of chattels which are not sufficiently important to be classed as conversion." *Morrow v. First Interstate Bank, N.A.*, 118 Or. App. 164, 168, 847 P.2d 411 (1993) (citation and internal quotations omitted). Conversion, in turn, is defined as "an intentional exercise of dominion and control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Id*. at 171 (citation and internal quotations omitted).

Plaintiff has sufficiently alleged that in March 2020, defendant Olsen interfered with her storage shed and damaged her personal possessions including wood shelving, a mountain bicycle, an electric piano and an oak table. Plaintiff has also sufficiently alleged that on March 23, 2020, defendant Olsen interfered with her vehicle causing it to be towed. Plaintiff's allegations from December 2018 are time-barred under ORS 12.110, which establishes a two-year limit on claims arising under a tort theory. As to conversion, plaintiff has sufficiently alleged that defendants Olsen and Smith converted a box of family memorabilia. Her other claims for conversion are duplicative of her trespass to chattels claims, and do not sufficiently allege a permanent deprivation of the personal property at issue.

Unlawful Tow under ORS 90.485

Under Oregon law, "[i]f a landlord assigns a specific parking space to a tenant, the landlord may have a vehicle towed . . . only with the agreement of the tenant at the time of the tow." ORS 90.485. Plaintiff's claim for unlawful tow fails as a matter of law because the alleged unlawful tow occurred outside the one-year statute of limitations. Plaintiff states that her car was unlawfully

towed on March 23, 2020. SAC ¶ 127. Plaintiff filed her Complaint on March 24, 2021, one year and one day after tow occurred. Thus, this claim is time-barred and dismissed.

Violation of Portland Renter Additional Protections

Portland City Code provides additional protections to renters under PCC 30.01.085. Plaintiff alleges that on November 6, 2019, defendant Olsen violated these protections by "more than doubling her rent," failing to provide her with proper notice of termination, and failing to provide her with the required relocation assistance. SAC ¶¶ 131-34. Portland City Code is subject to the same one-year statute of limitations as other landlord-tenant actions. ORS 30.01.085(A). This claim is also time-barred and dismissed.

IIED

To state a claim for IIED in Oregon, a plaintiff must allege sufficient facts that (1) defendant intended to cause plaintiff severe emotional distress or knew with substantial certainty that their conduct would cause such distress; (2) defendant engaged in outrageous conduct, i.e., conduct extraordinarily beyond the bounds of socially tolerable behavior; and (3) defendant's conduct in fact caused plaintiff severe emotional distress. *House v. Hicks*, 218 Or.App. 348, 357-58, 179 P.3d 730, 736 (2008) (citing *McGanty v. Staudenraus*, 321 Or. 532, 543, 550, 901 P.2d 841 (1995)). Plaintiff's SAC sufficiently alleges a claim against defendants for IIED. However, this claim is also subject to a two-year statute of limitations under ORS 12.110. Thus, plaintiff's claims are limited only to those acts that occurred on or after March 24, 2019.

(4) The fourth factor considers the sum of money at stake in this action. The damages here are particularly substantial, as plaintiff seeks $2,201,900 in statutory, consequential, and punitive damages against Olsen; $1,650,000 against Smith. The Court concludes that the fourth factor weighs against granting the motion.

(5) The fifth factor considers the possibility of a dispute concerning material facts. As discussed above, the defendants were properly served and five and one-half years later have yet to appear or in any meaningful way participate in this case. The Court must therefore accept as true plaintiff's well-pleaded factual allegations in the Complaint. No contrary evidence has been presented.

(6) and (7) The sixth and seventh factors favor granting plaintiff's motion. The sixth factor considers whether defendants' default was due to excusable neglect, and here the record shows that defendants were served but have not appeared or otherwise indicated an intent to do so. Defendant Smith sat for a deposition in this matter after receiving a subpoena to do so but has yet to answer the Complaint. Pl.'s Amended Mot. 8. As to the seventh factor, "default judgments are disfavored because cases should be decided on their merits whenever reasonably possible [but] the policy ... favoring decisions on the merits does not weigh against default judgment because [the defendants'] failure to appear makes a decision on the merits impractical." Contractors Bonding & Ins. Co., 2021 WL 5927682, at *3 (citations and internal quotations and brackets omitted).

In sum, after balancing the *Eitel* factors, the Court recommends that plaintiff's motion for default judgment should be granted as to liability but not damages. Additionally, those claims that are identified as time-barred or insufficiently pled should be dismissed.

///

///

///

///

///

///

**RECOMMENDATION**

Plaintiff's motion for default judgment (doc. 241) should be granted and default judgment entered against defendants Olsen and Smith. Fed. R. Civ. P. 55(b)(2). Damages shall be determined following the jury trial for the remaining defendants. Thus, to the extent plaintiff's motion is granted, it should be granted only as to liability.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

DATED this 28th day of September, 2026.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge